Charlotte Washington McLAREN,
et al., Petitioners,

v.

Ann BEARD, et al., Respondents.

No. D–0714.

Supreme Court of Texas.

June 19, 1991.

Cynthia T. Sheppard, Robert P. Houston, Victoria, for petitioners.

Herbert Crook, Austin, for respondents.

## OPINION

GONZALEZ, Justice.

This is a trespass to try title suit. The parties hold record title to abutting tracts of land through a partition deed executed by Col. William C. (Claude) Washington, Walter H. Washington, Sr.,[1] and others. Walter's branch of the family claims title to a subtract of the land through adverse possession under the ten-year statute of limitations. A jury found in favor of Walter's family and judgment was rendered awarding them title to the disputed tract. At issue is whether the trial court should have instructed the jury that Walter's family was required to repudiate the partition deed before the running of the limitations period could commence. The court of appeals held that the trial court erred in

failing to give such an instruction and remanded the cause to the trial court for a new trial. 798 S.W.2d 597. Because we hold that the trial court's instructions on the statutory elements of adverse possession were sufficient, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The 22.25–acre tract at issue is part of a 603–acre tract located in Travis County, originally owned by Stark Washington, who died in 1937. By his will, he devised a one-fourth interest in his estate, which included the 603–acre tract, to each of his four children, two of whom were Col. William C. (Claude) Washington and Walter H. Washington, Sr.

After initially holding the land as cotenants, Stark's children partitioned it in 1945 by a deed conveying "Tract A" to Claude and "Tract B" to Walter as shown in the following diagram.

---

1. Ann Beard, Jane Smith, and Robert Washington are the children of Claude. Charlotte Washington McLaren, Walter Washington, and Dixie Washington are the widow and children of Walter, Sr.

The interests received by the other two children are not at issue here.

At the time of the partition, only part of the boundary between Tracts A and B was fenced. Another fence cut across the southern part of Tract A to meet the boundary fence. The effect of this latter fence was to separate off a 22.25–acre portion of Tract A, which was enclosed with Tract B and separated by fence from the remainder of Tract A.

Neither Walter nor Claude had used or occupied the two tracts prior to the execution of the partition deed. In 1947, two years after the partitioning, Walter Washington and his family built and occupied a

house on Tract B. Walter's widow, Dixie, and his daughter, Charlotte Washington McLaren, testified that their family believed that the fence line constituted the boundary line of their property and that they always treated the entire enclosed tract as their own. They testified that, prior to Walter's death in 1967, the family lived on and farmed this land, grazing cattle, planting trees, picking pecans, playing, and hunting on the enclosed tract. After Walter's death, the family returned to Austin and leased the land to tenants who continued to use the entire enclosed tract for farming and ranching.

Claude Washington and his family moved to Austin in 1945. Claude never lived on Tract A, but he did run a farming and ranching operation there either personally or through tenants and often visited the land. The land was used to raise cattle and hay, and at times, hay was stored in one or more structures located on the 22.25–acre tract. Both families repaired the fences when needed.

In 1987, Claude's family decided they wanted to sell Tract A and asked Walter's family to remove their property from the 22.25–acre portion. Walter's family refused and notified Claude's family that they claimed title to the 22.25–acre tract by adverse possession. In response, Claude's family had a fence built along the boundary between the two tracts. Walter's family then instituted the present suit, alleging title by limitations and dispossession as a result of the fence. After the close of the evidence, Claude's family requested that the jury be instructed that, before they could find that Walter's family was in adverse possession of the property, they had to find that the family repudiated the partition deed and gave notice of such repudiation to Claude and his family. The district court instructed the jury on the statutory elements of adverse possession and over-

ruled Claude's family's objections to the jury charge and refused the requested instructions. The jury found in favor of Walter's family and judgment was rendered awarding them title to the disputed tract.

Claude's family appealed, objecting to the trial court's failure to submit their requested jury instructions on repudiation and notice, but not challenging the legal or factual sufficiency of the evidence to support the jury verdict.[2] The court of appeals reversed the judgment and remanded for a new trial, holding that, under the facts of this case, it was reversible error to refuse to give the instructions. 798 S.W.2d at 602. The court of appeals reasoned that, since Walter originally conveyed the 22.25–acre tract to Claude by partition deed, Walter was required to repudiate this deed and give notice thereof before his possession of the disputed tract became adverse and that the jury should have been so instructed. *Id.* at 601.

The complaint made by Walter's family requires a two-part analysis: First, we must determine under what circumstances repudiation and notice are required before adverse possession can commence. Second, we must decide whether, if repudiation and notice are required, the trial court must instruct the jury as to these requirements.

Jury Question No. 1 asked whether Walter Washington and his family maintained "exclusive, peaceable and adverse possession of the land in question, cultivating, using or enjoying the same continuously for any period of ten (10) consecutive years prior to August 25, 1987." The court gave instructions as to the meaning of "exclusive possession," "peaceable possession," and "adverse possession." "Adverse possession" was defined as "actual and visible

---

**2.** Jane Smith and Robert Washington complain by application that the court of appeals erroneously dismissed their appeal for lack of jurisdiction. They base their complaint on the court of appeal's refusal to include their names in the style of the case, and the court's pointed observation in a footnote that the bond was signed solely by Ann Beard. 798 S.W.2d 597, 598 n. 1.

The issue is moot, however, since there is no order of dismissal from the court of appeals, and its *judgment* reversed the trial court's judgment in its entirety. Further, our judgment reverses the judgment of the court of appeals.

appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." The language of the jury question and the definition of "adverse possession" track the relevant statutory provisions. *See* TEX.CIV.PRAC. & REM.CODE §§ 16.021(1), 16.026(a).[3]

In pertinent part, the instructions requested by Claude's family read as follows:

(1) You are instructed that before you may find that [Walter's family was] in adverse possession of the disputed property you must find from a preponderance of the evidence that either Walter Washington or [his wife] repudiated the title that they granted to [Claude Washington] in the partition deed.

(2) You are instructed that before you may find that [Walter's family was] in adverse possession of the disputed property you must find from a preponderance of the evidence that either Walter Washington or [his wife] gave actual notice of that repudiation, if any, to [Claude Washington or to his family], or that after such repudiation, if any, her possession was of such unequivocal notoriety that [Claude Washington or his family] would be presumed to have had notice thereof.

■ The doctrine of repudiation and notice has been applied in circumstances where a grantor remains in possession of land after the execution of a deed conveying the land to another and then later attempts to claim title to the conveyed land by adverse possession. We have held that, in such a case, the grantor is estopped by the deed to claim that post-conveyance possession is adverse. *Kidd v. Young*, 144 Tex. 322, 190 S.W.2d 65, 66 (1945). The grantor's possession is regarded as subservient to the title held by the grantee. *Id.* The limitations period does not commence running in the grantor's favor until the grantor repudiates the deed and gives no-

tice of such repudiation to the record owner. *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794, 797 (1955) (where the parties claiming title by limitations were not formally "grantors" but were parties to a judgment awarding title to another). The rationale is that the continued possession of the grantor is presumed permissive and does not become adverse until affirmative repudiation of the title granted to another. *Id.; see also Scott v. Rodgers*, 6 S.W.2d 731, 734 (Tex.Comm'n App.1928, judgm't adopted).

■ In the present case, Walter was a "grantor" of Tract A under the partition deed and Claude was the "grantee."[4] However, the parties agree that Walter did not use or occupy the disputed portion of Tract A before the execution of the deed and that he entered into possession only after the deed was executed. In both *Kidd* and *Sweeten*, we required repudiation and notice only because the grantor continued a possession that had been commenced prior to the execution of the deed. *See Sweeten*, 276 S.W.2d at 797; *Kidd*, 190 S.W.2d at 66; *see also Runnels v. Whitfield*, 593 S.W.2d 388, 390 (Tex.Civ.App.—Texarkana 1979, no writ) ("after a partition, one party's *continued possession* of a tract awarded to another is presumed to be permissive") (emphasis added); *Texas Co. v. Argo Oil Corp.*, 277 S.W.2d 308, 309 (Tex.Civ.App.— San Antonio 1955, writ ref'd n.r.e.) ("[o]ne *holding over* after the execution of a deed is regarded as a tenant at sufferance, and before limitation will run ... must repudiate his tenancy and give notice of such repudiation to the true owner.") (emphasis added). Where the grantor enters the land *after* the execution of the deed, however, the grantor's possession is not presumed permissive and the grantor is not required to repudiate the deed before possession can become adverse. *See American Nat'l*

---

**3.** Section 16.021(1) defines adverse possession as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person."

Section 16.026(a) provides that "[a] person must bring suit not later than 10 years after the

day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property."

**4.** The other two children were also "grantors" of Tract A under the partition deed.

*Bank v. Wingate,* 266 S.W.2d 934, 939–40 (Tex.App.—Beaumont 1953, writ ref'd n.r.e.) (repudiation required where grantor was in possession of land at time of deed but not where grantor re-entered land after deed).[5]

 Thus, on the facts of this case, the doctrine of repudiation and notice is simply not applicable because Walter was not in possession of the disputed tract at the time the deed was executed. A grantor who enters onto conveyed land for the first time after the execution of a deed is treated as any other trespasser would be.[6] The grantor's period of adverse possession commences as soon as the grantor takes "actual and visible" possession of the property "under a claim of right that is inconsistent with and hostile to the claim of" the grantee. TEX.CIV.PRAC. & REM.CODE § 16.021(1). To the extent that the doctrine of repudiation and notice would require a showing of more than actual and visible possession hostile to the claim of another, it does not apply to this situation. The trial court therefore correctly refused to give the instructions requested by Claude's family regarding repudiation and notice.

 Moreover, under circumstances where the doctrine of repudiation and notice would apply, we would not require that the jury be instructed as to this doctrine. As discussed above, repudiation of a deed by the grantor is necessary to give notice that the grantor's initially permissive possession, commenced before the execution of the deed, has become a hostile or adverse possession. Repudiation thus establishes the point at which adverse possession commences in the case where possession was initially permissive. The repudiation requirement is therefore subsumed in the requirement, generally applicable to all adverse possession cases, that the possession must be commenced and continued under a claim of right hostile to and inconsistent with that of another. An instruction on the statutory definition of adverse possession, which incorporates the notion of repudiation, is therefore sufficient. *Cf. Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex.1987) ("under the same or similar circumstances" instruction in medical malpractice case incorporates the locality rule).

For the above reasons, the court of appeals erred in holding that the trial court should have instructed the jury on repudiation and notice. We therefore reverse the judgment of the court of appeals and affirm the judgment of the trial court awarding Walter's family, petitioners, title to the disputed tract.

Dissenting opinion by HIGHTOWER, J.

HIGHTOWER, Justice, dissenting.

I dissent. Today the Court has placed a heavy burden upon cotenants (frequently family members) who partition their property. The Court would apparently require former cotenants to vigilantly watch over their partitioned tract (if not immediately remove any pre-existing fences inconsistent with the new boundaries and erect new fences on the new dividing line) to insure that former cotenants on adjoining tracts do not attempt to use their adjacent property and acquire title by "adverse" possession. While ignoring the unique characteristics of cotenants and cotenancy, the Court inappropriately applied the law concerning grantors who remain in possession of their land after the execution of a deed conveying the property to another and subsequently claiming title by adverse possession.

---

**5.** The court of appeals relied on *Haynes v. Dunn,* 518 S.W.2d 880, 885–86 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.), in which a court of appeals applied the repudiation doctrine, citing *Kidd,* even though the grantor's possession commenced *after* his execution of the deed. As discussed in the text, we do not believe that *Kidd* supports such an application of the repudiation doctrine. In addition, *Haynes* may be distinguished on its complicated facts, which are not analogous to the facts before us in this case.

**6.** Respondents argue that Walter's initial entry onto Tract B was permissive because he entered under rights granted by him in the partition deed. However, Walter's entry onto the disputed portion of *Tract A* was not permissive under the deed.

I agree with the following reasoning of the Third Court of Appeals:

> [A]fter a partition, one party's continued possession of a tract awarded to another is presumed to be permissive, similar to that of a grantor who remains in possession, and repudiation and notice are required before limitations begin to run. *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794, 797 (1955); *Runnels v. Whitfield*, 593 S.W.2d 388, 390 (Tex.App.1979, no writ); *Texas Co. v. Argo Oil Corp.*, 277 S.W.2d 308, 309 (Tex.Civ.App.1955, writ ref'd n.r.e.). Likewise, one cotenant claiming adverse possession as to other cotenants must repudiate title in such a manner as to bring such repudiation to the notice of the other cotenants. *Todd v. Bruner*, 365 S.W.2d 155 (Tex.1963).

 \* \* \* \* \* \*

[In this case,] appellees were required to show repudiation and notice before limitations commenced. Walter Washington was not a stranger claiming possession to the 22.25–acre tract. Instead, he, in the most solemn manner, conveyed that acreage to his brother, Col. Washington. His deed to Col. Washington estopped him, as grantor, from claiming that his possession of the 22.25 acres was adverse. *Kidd v. Young*, 144 Tex. 322, 190 S.W.2d 65, 66 (1945). Under the circumstances, Walter's possession of the tract must be regarded as subservient to the title held by Col. Washington, until such time as he repudiated Col. Washington's title and brought such repudiation to the Colonel's notice. *Haynes v. Dunn*, 518 S.W.2d 880, 885–86 (Tex.Civ.App.1975, writ ref'd n.r.e.).

The district court's submission is probably adequate in the usual situation where a stranger in possession of property raises a claim adverse to the record title owner. Under the facts of this case, however, the district court was required to instruct the jury regarding repudiation and notice. Because the district court's submission did not include the elements of repudiation and notice, it was erroneous. . . .

798 S.W.2d at 601–02. After partition, a cotenant's possession of a tract awarded to another cotenant should be presumed to be permissive. Under these circumstances, a former cotenant claiming adverse possession of a tract awarded to another former cotenant or cotenants must repudiate title in a manner sufficient to bring such repudiation to the notice of the former cotenant or cotenants.

For these reasons, I dissent.